1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12 | UNITED STATES OF AMERICA,

Plaintiff/Respondent,

14 | v.

16 | JAIME ARANA DEL TORO,

Defendant/Petitioner.

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK

**ORDER DENYING § 2255 MOTION
AS TO FOURTH GROUND FOR
RELIEF**

Re: Dkt. No. 1 (16-CV-02538-LHK)
Re: Dkt. No. 423 (12-CR-00670-LHK)[1]

Petitioner Jaime Toro ("Petitioner") has filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. ECF No. 423 ("Mot."). Petitioner is currently serving a 120 month statutory mandatory minimum sentence of imprisonment for his July 8, 2015 conviction for possession with intent to distribute 50 grams or more of methamphetamine.

Petitioner's § 2255 Motion seeks relief on the following four grounds: (1) Petitioner's sentence was too severe "for mere transportation" of methamphetamine; (2) Petitioner's "limited English" prevented him from "fully understanding" the "implications" of Petitioner's plea

---

[1] All docket entries in this Order are to Case No. 12-CR-00670 unless otherwise noted.

agreement; (3) Petitioner's trial counsel was ineffective because counsel did not provide him advice on the extent of Petitioner's rights, the rights Petitioner was giving up, and Petitioner's eligibility for potential benefits (such as the Fast Track Program for Deportable Aliens); and (4) Petitioner's trial counsel was ineffective because counsel did not file an appeal. *Id.* at 5. On September 8, 2016, the Court denied Petitioner's Motion with respect to Petitioner's first, second, and third asserted grounds for relief. ECF No. 439 ("Prior Order"). In the instant order, the Court addresses Petitioner's fourth asserted ground for relief. Having considered the parties' briefing, the relevant law, and the record in this case, Petitioner's Motion with respect to Petitioner's fourth ground for relief is DENIED.

# I.     FACTUAL & PROCEDURAL BACKGROUND

## A.     Charges Against Defendant and Guilty Plea

On December 4, 2013, a federal grand jury returned an indictment which charged Petitioner with (1) conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 & 846; and (2) possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841. ECF No. 117 at 7.

On April 8, 2015, Petitioner pled guilty to possession with intent to distribute 50 grams or more of methamphetamine. ECF No. 314 ("Plea Agmt."). Petitioner's guilty plea was pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) binding plea agreement with the Government. *See* Fed. R. Crim. P. 11(c)(1)(C) (a "plea agreement may specify that an attorney for the government will agree . . . that a specific sentence or sentencing range is the appropriate disposition of the case," which "binds the court once the court accepts the plea agreement"). Petitioner and the Government agreed to the following recommended sentence: "120 months of imprisonment, five years of supervised release (with conditions to be fixed by the Court), and a $100 special assessment." Plea Agmt. at 5. Petitioner's sentence of 120 months of imprisonment is the statutory mandatory minimum for possession with intent to distribute 50 grams or more of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The statutory mandatory minimum

United States District Court
Northern District of California

applied to Petitioner because Petitioner pled guilty to possession with intent to distribute 327.65 grams of methamphetamine, over six times the quantity that triggers the 120 month statutory mandatory minimum sentence. Plea Agmt. at 3.

## B. Terms of Plea Agreement and Change of Plea Hearing

Pertinent excerpts of Petitioner's plea agreement are reproduced below:

2. I agree that I am guilty of the offense of which I am pleading guilty, and I agree that the following facts are true:

a. The following is a summary of evidence that I possessed methamphetamine with the intent to distribute it.

b. On September 5, 2013, at approximately 6:56 p.m., I called Efrain Canchola and asked if he had something there. I asked how it was, and Canchola said it was clean, white and transparent. I asked Canchola to make two packages of 112 and one package of 224. I said I was going to come pick them up right now. Canchola asked how long. I said 10 minutes at most.

c. Law enforcement officers monitored the court authorized pole camera at Canchola's residence . . . and at approximately 7:02 p.m., they observed me walk into the residence. Approximately seven minutes later, I departed the residence. Canchola delivered the methamphetamine to me when I was at his residence. I intended to distribute the methamphetamine to others.

d. Later that evening, a Contra Costa deputy stopped my car . . . and seized three cellophane wrapped sandwich baggies that contained methamphetamine.

e. The DEA laboratory determined that the substance seized from this car was a mixture weighing approximately 331.3 grams (net weight) that contained d-methamphetamine hydrochloride with a purity of 98.9 percent. The amount of actual (pure) methamphetamine was approximately 327.65 grams.

f. On September 12, 2013, law enforcement officers executed a search warrant at Canchola's residence . . . [and] Canchola was arrested at the scene.

g. Law enforcement officers found approximately two pounds of methamphetamine in a drawer in a bedroom. The agents also seized from

3

the residence a ledger, and the last three entries next to the name "Jamie" [sic] match the quantities (in grams) of the order for drugs I gave Canchola on September 5, 2013.

h. I stipulate and agree that the total weight of actual (pure) methamphetamine attributable to me for the purpose of determining relevant conduct is approximately 327.65 grams.

3.  I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.  I waive any defense based on venue, and I agree that this prosecution may be brought in the Northern District of California.

4.  I agree to give up my right to appeal my conviction, the judgment, and any orders of the Court.  I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution.

5.  I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea.  I also agree not to seek relief under 18 U.S.C. § 3582.

\* \* \*

18.  I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

19.  I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

20.  I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial.  I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

21.  I confirm that I read this entire Agreement with the assistance of a Spanish language interpreter and in the presence of my attorney.

Plea Agmt. at 3–7.  The agreement was signed by a certified Spanish language interpreter, who

4

stated that he had translated the plea agreement into Spanish for Petitioner. *Id.* at 8.

Petitioner pled guilty at a change of plea hearing on April 8, 2015. ECF No. 313 at 1. A certified Spanish language interpreter interpreted the hearing for Petitioner. Nonetheless, Petitioner chose to respond to numerous questions in English without the assistance of an interpreter. An excerpt of the change of plea colloquy is reproduced below.

The Court: All right. Ms. Sakamoto, would you please swear in Mr. Del Toro.

The Clerk: Yes, Judge. Sir, would you please raise your right hand.

(Jaime Arana Del Toro, Defendant, was sworn)

Petitioner: Yes.

The Clerk: Thank you, sir.

(All statements attributed to Petitioner were through the Spanish interpreter unless otherwise noted.)

The Court: Mr. Del Toro, I have some questions to ask you. If you need me to repeat or explain anything, would you please tell me?

Petitioner: (in English) Okay.

The Court: If you need to speak with your attorney before answering any question, would you please do so?

Petitioner: (in English) Okay.

The Court: You've taken the oath, which is a promise to tell the truth. If you make an untrue statement during today's proceedings, the Government can use that statement to prosecute you for perjury. Do you understand that?

Petitioner: (in English) Yes.

The Court: What is your true name?

Petitioner: (in English) Jaime Arana del Toro.

The Court: How old are you?

Petitioner: (in English) Thirty.

5

The Court: What is the highest level of schooling you attended?

Petitioner: (in English) High school.

The Court: Now, you're answering all of your questions in English. My understanding is that if you do use the Spanish interpreter, you do have to respond in Spanish and have the interpreter translate your answer into English.

Petitioner: (in English) I'm sorry.

The Court: Not a problem. No need to apologize. I'm glad that you actually can hear both ways, in English and in Spanish, so we'll definitely make sure that you understand what is happening today. Was this plea agreement translated into Spanish for you?

Petitioner: Yes.

The Court: Do you understand the plea agreement?

Petitioner: Yes.

The Court: Have you had enough time to discuss the plea agreement with your attorney?

Petitioner: Yes.

The Court: Has your attorney been able to answer your questions about the plea agreement?

Petitioner: Yes.

The Court: Are you satisfied with the services your attorney has provided to you?

Petitioner: Yes.

* * *

The Court: Is your decision to plead guilty free and voluntary?

Petitioner: Yes.

* * *

The Court: You are pleading guilty to what is called a binding plea agreement. It is pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). What this means is that you have reached agreements with the Government in this plea, including you've reached an agreement as to what your sentence should be. If I don't sentence you according to your agreements in this binding plea agreement, you can withdraw your guilty plea. Do you understand that?

Petitioner:  Okay, yes.

* * *

The Court:  I'm next going to ask you about rights that you have[,] to make sure that you understand your rights and to make sure that you are freely giving up your rights.  The first question I have for you is, do you understand that you have the right to a jury trial?

Petitioner:  Yes.

The Court:  Do you give up that right?

Petitioner:  Yeah.

* * *

The Court:  Do you understand if this case were to go to trial and you were to be convicted, you would have the right to appeal your conviction, the judgment, your sentence, and any orders made by this Court?

Petitioner:  (in English) Yes.

The Court:  Do you understand that in paragraph 4 of your plea agreement, you are giving up your right to appeal?

Petitioner:  (in English) Yeah.

The Court:  Do you understand that you also have the right to file other types of motions or petitions attacking orders made by the Court, including attacking your conviction and your sentence?

Petitioner:  (in English) Yes.

The Court:  Do you understand that in paragraph 5 of your plea agreement, you are giving up this right, except you are keeping the right to claim that your lawyer was not effective in negotiating your plea agreement or in your entry of a guilty plea?

Petitioner:  (in English) Yes.

*Id.* at 8–9.  The Government went on to state the offer of proof by reading directly from

Petitioner's plea agreement.  At the end of the Government's statement, the Court asked whether

Petitioner understood "the facts the Government [was] prepared to prove" at trial and whether

"those facts [are] true and correct."  Petitioner answered, "Yeah," again in English.  *Id.* at 11.  The

Court subsequently found that Petitioner had "made a knowing, intelligent, free and voluntary

7

waiver of rights," and accepted Petitioner's guilty plea." *Id.* at 12. Petitioner's sentencing was set for July 8, 2015.

###    C.    Sentencing

In advance of Petitioner's sentencing, the United States Probation Office prepared a presentence report, which was filed on June 22, 2015. ECF No. 360 ("Presentence Report" or "PSR"). For purposes of determining Petitioner's sentencing range under the United States Sentencing Guidelines, the presentence report found Petitioner to be a career offender. Under U.S.S.G. § 4B1.1(a), "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Here, Petitioner was over 18 when he committed the instant felony; the instant felony (possession with intent to distribute 50 grams or more of methamphetamine) was a controlled substance offense; and Petitioner had two prior felony convictions for possession for sale of methamphetamine. Petitioner has never challenged the United States Probation Office's finding that Petitioner is a career offender.

The presentence report found Petitioner's total offense level to be 34. This finding reflected a base offense level of 32, a five level enhancement for being a career offender, and a three level reduction for acceptance of responsibility. *Id.* at 15. Given Petitioner's prior felony convictions for possession of methamphetamine, the presentence report determined Petitioner's criminal history score to be 6. *Id.* at 16–17. Normally, under the Sentencing Guidelines, a criminal history score of 6 would translate to a criminal history category of III. However, because Petitioner was found to be a career offender, the Sentencing Guidelines required Petitioner's criminal history category to be VI. U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."). "Based upon a total offense level of 34 and a criminal history category of VI," Petitioner's Sentencing Guidelines range was

calculated to be 262 to 327 months of imprisonment.  PSR at 23.

A certified Spanish language interpreter interpreted the sentencing hearing for Petitioner. Sentencing Tr. at 2.  Nonetheless, Petitioner chose to respond to some questions in English without the assistance of an interpreter.  For example, Petitioner stated in English that he "came to the United States" when he was "five or six years old"; that he attended preschool through 11th grade in English in the United States; that he attended elementary, middle, and high school in English in the United States; and that he had lived in the United States for about 25 or 26 years.  *Id.* at 3–4. During sentencing, Petitioner chose to answer some of the Court's questions in English, wrote a letter in English himself for the Court to read, and gave his allocution in English.  *Id.* at 11–14. The Court found Petitioner's command of English to be "excellent."  *Id.* at 14.

At sentencing, the Court again stated that Petitioner had entered into a binding plea agreement with a sentencing recommendation of 120 months of imprisonment.  Should the Court decline to adopt this sentencing recommendation, Petitioner could "withdraw his guilty plea and the Government [could] withdraw its plea offer and go back to . . . the beginning of the case."  *Id.* at 15.  The Court further agreed with the United States Probation Office's finding that Petitioner's Sentencing Guidelines range was 262 to 327 months.  *Id.* at 16.  Ultimately, the Court sentenced Petitioner to 120 months of imprisonment and a five year term of supervised release—the exact terms stated in Petitioner's binding plea agreement.  ECF No. 370 at 1.  Moreover, 120 months was the statutory mandatory minimum sentence Petitioner could receive because Petitioner pled guilty to possession of 327.65 grams of methamphetamine, over six times the quantity that triggers the 120 month statutory mandatory minimum sentence.  *See* 21 U.S.C. § 841(b)(1)(A)(viii) (120 month statutory mandatory minimum sentence where a defendant possesses 50 or more grams of methamphetamine).

After sentencing Petitioner, the Court explicitly informed Petitioner that he had an avenue to file a notice of appeal if he believed his appeal waiver was defective:

> If for any reason you believe your right to appeal waiver, that means giving up
> your right to appeal, is defective and you wish to file a notice of appeal, you must

9

do so in writing within 14 days from today's date. If you can't afford to pay the filing fees, you have a right to apply to proceed in forma pauperis.

Sentencing Tr. at 23.

The Government moved at sentencing to dismiss Petitioner's charge for conspiracy to distribute 50 grams or more of methamphetamine. Sentencing Tr. at 24. The Court entered judgment on July 13, 2015. ECF No. 377.

### D. § 2255 Motion

On May 10, 2016, Petitioner filed the instant § 2255 Motion. Petitioner's § 2255 Motion seeks relief on the following four grounds: (1) Petitioner's sentence was too severe "for mere transportation" of methamphetamine; (2) Petitioner's "limited English" prevented him from "fully understanding" the "implications" of Petitioner's plea agreement; (3) Petitioner's trial counsel was ineffective because counsel did not provide him advice on the extent of Petitioner's rights, the rights Petitioner was giving up, and Petitioner's eligibility for potential benefits (such as the Fast Trak Program for Deportable Aliens); and (4) Petitioner's trial counsel was ineffective because counsel did not file an appeal. Mot. at 5. On June 10, 2016, the Court directed Respondent to answer the § 2255 Motion. Case No. 16-CV-2538, ECF No. 2 at 2. The Court also provided Petitioner an opportunity to supplement his § 2255 Motion with a supporting memorandum of points and authorities. *Id.* Petitioner filed his supporting memorandum on July 18, 2016. ECF No. 431 ("Supp. Mem."). Respondent filed a response on August 16, 2016. ECF No. 433 ("Opp'n").

On September 8, 2016, the Court denied Petitioner's § 2255 Motion with respect to Petitioner's first three asserted grounds for relief. Prior Order at 20. The Court also ordered the Government to subpoena Petitioner's trial counsel and obtain a declaration on (1) whether petitioner told his counsel to file an appeal, and (2) whether counsel refused to file an appeal on Petitioner's behalf. *Id.* at 20–21. On October 6, 2016, the Government filed Petitioner's trial counsel's declaration. ECF No. 444, Declaration of James Thompson ("First Thompson Decl.").

On December 5, 2016, the Court ordered the Government to subpoena Defendant's trial

United States District Court
Northern District of California

counsel and obtain a second declaration on "(1) whether counsel "consulted" with Petitioner regarding Petitioner's intent to file a notice of appeal within the meaning of *Roe v. Flores-Ortega*[, 528 U.S. 470, 473 (2000)] and the result of any such consultation, (2) whether Petitioner ever took any actions of which counsel was aware or made any statements to counsel that could be construed as demonstrating an interest in filing an appeal, and (3) any other facts that may be pertinent to the inquiry described in *Roe v. Flores-Ortega* and *United States v. Sandoval-Lopez*[, 409 F.3d 1193 (9th Cir. 2005)]." On December 20, 2016, the Government filed Petitioner's trial counsel's second declaration. ECF No. 449, Declaration of James Thompson ("Second Thompson Decl.").

Petitioner's trial counsel's declarations indicate that the following sequence of events occurred. Petitioner's trial counsel states that he was appointed to represent Petitioner on September 30, 2013. Second Thompson Decl. ¶ 2. Petitioner's trial counsel negotiated the plea agreement with the Government on Petitioner's behalf. *Id.* ¶ 3. As noted above, the plea agreement provided for a 120 month sentence. *Id.* Petitioner's trial counsel states that he considered the plea agreement "very favorable" to Petitioner because, if Petitioner had gone to trial, he risked a much higher sentence under the United States Sentencing Guidelines range of 262 to 327 months. *Id.* ¶ 4.

On February 19, 2015, Petitioner's trial counsel and Petitioner reviewed the plea agreement. *Id.* ¶ 5. Petitioner's trial counsel states in his declarations that he "specifically discussed with [Petitioner] how his sentence could be computed under the Career Offender provisions of the Sentencing Guidelines and how the plea agreement was advantageous for him because the plea agreement would limit his prison sentence to ten years." *Id.* Petitioner's trial counsel also informed Petitioner that by entering the plea agreement, Petitioner would lose his right to appeal his sentence. *Id.* Petitioner's trial counsel provided a copy of the plea agreement to Petitioner. *Id.*

Moreover, because the Government was unable to gain approval of the plea agreement immediately, Petitioner's trial counsel states that he discussed the status of the plea agreement with

United States District Court
Northern District of California

Petitioner six times by phone between February 19, 2015 to March 31, 2015.  *Id.*  On March 31, 2015, Petitioner's trial counsel states that he informed Petitioner that the Government had approved the plea agreement.  *Id.*  As noted above, on April 8, 2015, Petitioner pled guilty pursuant to the plea agreement.  *Id.* ¶ 6.

On July 7, 2015, Petitioner's trial counsel met with Petitioner "to prepare for sentencing and to review the final PSR."  *Id.*  ¶ 7.  Petitioner's trial counsel states that Petitioner and Petitioner's trial counsel "did not discuss the appellate waiver in the plea agreement, and [Petitioner] did not raise the subject of filing an appeal."  *Id.*  As noted above, Petitioner was sentenced on July 8, 2015.  *Id.*  Petitioner's trial counsel asserts that "[a]t no point during the sentencing hearing or after the hearing did Mr. Del Toro raise with me or the Court the subject of filing an appeal."  *Id.*

Petitioner's trial counsel states that he did not hear from Petitioner again after the July 8, 2015 sentencing until February or early March of 2016 when Petitioner asked for a copy of his presentence report and information about good time credits.  *Id.* Petitioner's trial counsel states that Petitioner "did not at any time, including this exchange in the spring of 2016, ask me to prepare a notice of appeal on his behalf, or in any way suggest that he wanted to file a notice of appeal."  *Id.*  Moreover, Petitioner's trial counsel states that "[a]t no point after entering his guilty plea on April 8, 2015, did Mr. Del Toro indicate to me that he was dissatisfied with his plea agreement."  *Id.* ¶ 8.

On February 10, 2017, Petitioner filed a declaration in response to the declarations of Petitioner's trial counsel, in which Petitioner states that "I instructed my legal counsel to file an appeal on my behalf but my legal counsel did not follow through with my request."  ECF No. 454.

## II.     LEGAL STANDARD

A § 2255 motion to set aside, correct or vacate a sentence of a person in federal custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING § 2255 MOTION AS TO FOURTH GROUND FOR RELIEF

attack." 28 U.S.C. § 2255(b). Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (emphasis omitted). A court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case can not conclusively show that the petitioner is entitled to no relief. *Howard*, 381 F.3d at 877. If a hearing is required, district courts may make factual findings based on oral testimony, evidence in the record, or a combination of the two. *See Crittenden v. Chappell*, 804 F.3d 998, 1006–07 (9th Cir. 2015) (reviewing for clear error district court's findings made from a "cold record") (citing Fed. R. Civ. P. 52(a)(6) ("[F]indings of fact, whether based on oral or *other evidence*, must not be set aside unless clearly erroneous")).

## III.  DISCUSSION

The sole issue remaining before the Court on Petitioner's § 2255 Motion is whether Petitioner's trial counsel was ineffective because Petitioner's trial counsel did not file an appeal. Mot. at 5. Petitioner's § 2255 Motion asserts that "I wanted to file an appeal, but [my attorney] did not follow through, and I forfeited that right." *Id.* Similarly, Petitioner's February 10, 2017 declaration states that "I instructed my legal counsel to file an appeal on my behalf but my legal counsel did not follow through with my request." ECF No. 454.

A petitioner's claim of ineffective assistance of counsel is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on a *Strickland* claim, Petitioner must establish two things. First, he must establish that counsel's representation was deficient, i.e., that it "fell below an objective standard of reasonableness" under prevailing

professional norms. *Id.* at 687–88. Second, Petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The United States Supreme Court, in *Roe v. Flores-Ortega*, 528 U.S. 470, established the "proper framework for evaluating an ineffective assistance of counsel claim, based on counsel's failure to file a notice of appeal without [the defendant's] consent." *Id.* at 473. The *Roe* Court's analysis began with a point of clearly established law: "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477. Thus, if a defendant instructs his or her counsel to file an appeal and the defendant's counsel fails to do so, the Ninth Circuit has held that counsel's actions violate both the performance prong and the prejudice prong of *Strickland*. *See United States v. Sandoval-Lopez*, 409 F.3d at 1195–96 ("If, as [the petitioner] claims, it is true that he explicitly told his lawyer to appeal his case and his lawyer refused, then we are required by [*Roe*] to conclude that it was deficient performance not to appeal and that [the petitioner] was prejudiced."). Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe*, 528 U.S. at 473.

If the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," a more detailed analysis of *Strickland*'s two prongs is necessary. *Id.* at 478. With respect to *Strickland*'s performance prong, the court must engage in a two-part inquiry to determine whether deficient performance has occurred. *Id.* at 478; *Sandoval-Lopez*, 409 F.3d at 1195–96 (discussing the two-part inquiry). First, the court must ask "whether counsel in fact consulted with the defendant about an appeal." *Roe*, 528 U.S. at 478. The United States Supreme Court held that the "term 'consult' [] convey[ed] a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* "If counsel has consulted with the defendant[,] . . . [c]ounsel performs in a

14

professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

However, "[i]f counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* at 478. Counsel's failure to consult with a defendant constitutes deficient performance where "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

With respect to *Strickland*'s prejudice prong, even if Petitioner's trial counsel's performance was deficient because he failed to consult Petitioner about an appeal, Petitioner must still show prejudice. In the context of a failure to file an appeal, prejudice exists where "counsel's deficient performance deprived [the defendant] of a notice of appeal and, hence, an appeal altogether." *Id.* at 483. Thus, Petitioner must "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [Petitioner] would have timely appealed." *Id.* at 484.

Here, as noted above, Petitioner asserts that "I wanted to file an appeal, but [my attorney] did not follow through, and I forfeited that right." Mot. at 5. Similarly, Petitioner's February 10, 2017 declaration states that "I instructed my legal counsel to file an appeal on my behalf but my legal counsel did not follow through with my request." ECF No. 454. The Court first addresses whether Petitioner's trial counsel rendered ineffective assistance of counsel because Petitioner asked his trial counsel to file an appeal and Petitioner's trial counsel failed to file such an appeal. The Court then addresses whether Petitioner's trial counsel consulted with Petitioner regarding an appeal and whether a failure to consult in this case constitutes ineffective assistance of counsel under *Strickland*.

### A. Whether Petitioner Asked His Counsel to File an Appeal

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING § 2255 MOTION AS TO FOURTH GROUND FOR RELIEF

As discussed above, if Petitioner "explicitly told his lawyer to appeal his case and his lawyer refused, then we are required by [United States Supreme Court precedent] to conclude that it was deficient performance not to appeal and that [Petitioner] was prejudiced." *Sandoval-Lopez*, 409 F.3d at 1197. This holding applies even where—as in the instant case—Petitioner's plea agreement included an appeal waiver. *See id.* (finding potential ineffective assistance of counsel if the petitioner instructed his trial counsel to file an appeal even though "[a]n appeal would most probably have been dismissed because it had been waived").[2] Thus, the Court must address whether Petitioner ever asked his trial counsel to file an appeal.

For the reasons discussed below, the Court finds that Petitioner never asked his trial counsel to file an appeal. The Court bases this determination on the record and the declarations of Petitioner and Petitioner's trial counsel. *See Crittenden*, 804 F.3d at 1006–07 (holding that a district court can make deference-creating factual findings based solely on the record). The Court addresses each piece of evidence in turn.

As set forth in the background section above, Petitioner signed a plea agreement in which Petitioner agreed to the following: "I agree to give up my right to appeal my conviction, the judgment, and any orders of the Court. I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution." Plea Agmt. at 6. At the hearing where Petitioner pled guilty, the Court explicitly asked Petitioner whether he understood that he was giving up his right to an appeal by pleading guilty pursuant to the plea agreement and Petitioner acknowledged that he was giving up that right:

The Court: Do you understand if this case were to go to trial and you were to be convicted, you would have the right to appeal your conviction, the judgment, your sentence, and any orders made by this Court?

Petitioner: (in English) Yes.

The Court: Do you understand that in paragraph 4 of your plea agreement, you are giving up your right to appeal?

---

[2] Even if Petitioner succeeds on this particular ineffective assistance of counsel claim, the sole remedy is to allow an "appeal to proceed." *Sandoval-Lopez*, 409 F.3d at 1198.

Petitioner:  (in English) Yeah.

Plea Tr. at 14.

Additionally, at Petitioner's July 8, 2015 sentencing, the Court explicitly told Petitioner the following after imposing a 120 month sentence: "If for any reason you believe your right to appeal waiver, that means giving up your right to appeal, is defective and you wish to file a notice of appeal, you must do so in writing within 14 days from today's date."  Sentencing Tr. at 23. Petitioner did not file an appeal within 14 days of his sentencing.  In fact, Petitioner did not contact his attorney at all after sentencing until February or March of 2016.  Second Thompson Decl. ¶ 7. At that time, Petitioner did not mention his desire for an appeal, but asked Petitioner's trial counsel for a copy of Petitioner's presentence report and information on good time credits.  *Id.*  Petitioner then filed the instant § 2255 Motion two or three months later, on May 10, 2016.  *See* ECF No. 423.  In summary, Petitioner signed an agreement waiving his right to appeal, verbally waived that right to an appeal in his plea colloquy, and took no action to file a notice of appeal in the time provided by the Court if Petitioner thought his appeal waiver was defective.

Moreover, in exchange for giving up his right to appeal, Petitioner received a considerable benefit: the statutory mandatory minimum sentence of 120 months for his crime of possession with intent to distribute over 50 grams of methamphetamine, rather than a sentence in the Guideline Range of 262 to 327 months.  Sentencing Tr. at 17.  The Government also dismissed a second charge for conspiracy to distribute 50 grams or more of methamphetamine.  *Id.* at 24.  Moreover, Petitioner could not be sentenced lower than the 120 month statutory mandatory minimum sentence because Petitioner, a career offender, could not qualify for the safety valve.  *See* U.S.S.G. § 5C1.2 (allowing a sentence below the mandatory minimum sentence only where "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines").

Despite Petitioner's consistent waiver of his right to appeal and the significant benefit he received from the plea agreement and its appeal waiver, Petitioner now asserts that he asked his trial counsel to file an appeal.  The sole evidence that Petitioner asked his trial counsel to file an

17

appeal is Petitioner's own statements in his § 2255 Motion and Petitioner's February 10, 2017 declaration. Mot. at 5 ("I wanted to file an appeal, but [my attorney] did not follow through, and I forfeited that right."); ECF No. 454 ("I instructed my legal counsel to file an appeal on my behalf but my legal counsel did not follow through with my request.").

In contrast, Petitioner's trial counsel has stated in declarations that Petitioner never asked Petitioner's trial counsel to file an appeal. On September 27, 2016, the Government filed Petitioner's trial counsel's first declaration, which outlines the plea agreement Petitioner obtained and explicitly states that "[a]t no point, either before or after [Petitioner's] sentence was imposed did [Petitioner] tell me or ask me to file an appeal on his behalf. Because there had been no request for an appeal to be filed in [Petitioner's] case, I did not 'refuse' to file an appeal." First Thompson Decl. ¶ 6. On December 20, 2016, the Government filed Petitioner's trial counsel's second declaration. Second Thompson Decl. In the second declaration, Petitioner's trial counsel provides additional detail about the negotiation of the plea agreement and states that Petitioner and Petitioner's trial counsel had multiple discussions (at least two private in-person meetings and six phone calls) about the plea agreement. *Id.* ¶¶ 1–9. Petitioner's trial counsel's declaration states that Petitioner "did not at any time . . . ask me to prepare a notice of appeal on his behalf, or in any way suggest that he wanted to file a notice of appeal." *Id.* ¶ 7.

The Court finds that Petitioner's trial counsel's statements are credible while Petitioner's statements are not credible. The Court reaches this conclusion because Petitioner waived his right to appeal in his binding plea agreement, affirmed that he was waiving that right in his plea colloquy, took no action to appeal his sentence in the 14 days provided by the Court for doing so following sentencing, and received a significant benefit by giving up his right to appeal. Petitioner's consistent waiver of his right to appeal belies his claim that he asked his trial counsel to appeal. In contrast, Petitioner's trial counsel's statement that Petitioner made no request for an appeal is consistent with Petitioner's statements, actions, and the benefits he received by giving up his right to appeal. Thus, because the Court finds that Petitioner's claim that he asked his trial

18

counsel to file an appeal lacks credibility and finds that Petitioner's trial counsel's statement that Petitioner never asked his trial counsel to file an appeal is credible, the Court finds that Petitioner never asked his trial counsel to file an appeal.

Accordingly, Petitioner's *Strickland* claim fails to the extent it relies on Petitioner directly requesting his trial counsel to file an appeal.

### B.     Consultation Regarding an Appeal

Even if a petitioner does not ask for his or her counsel to file a notice of appeal, counsel may still be ineffective under *Roe v. Flores-Ortega* for failing to consult with a defendant about an appeal. Neither *Roe* nor *Sandoval* indicates exactly when a consultation regarding an appeal must occur or whether the inclusion of an appeal waiver in a plea agreement after defense counsel discusses the appeal waiver with the defendant satisfies the consultation requirement. If a knowing appeal waiver entered on the advice of counsel is sufficient to satisfy the consultation requirement, an adequate consultation likely occurred here. *See* Second Thompson Decl. ¶¶ 1–9 (indicating that Petitioner's trial counsel met with petitioner and explained the appeal waiver). However, if consultation means a specific conversation about whether an appeal should be filed despite an appeal waiver, Petitioner's trial counsel has not provided evidence of such a consultation. *See* First Thompson Decl. ¶¶ 1–5; Second Thompson Decl. ¶¶ 1–9.

The Court need not resolve whether Petitioner's trial counsel consulted with Petitioner about an appeal because the Court finds below that even if Petitioner's trial counsel failed to consult with Petitioner, Petitioner's trial counsel's actions did not constitute ineffective assistance of counsel under *Strickland*. As discussed above, to constitute ineffective assistance of counsel under *Strickland*, Petitioner must establish that Petitioner's trial counsel's failure to consult constituted deficient performance and caused Petitioner prejudice. *See Strickland*, 466 U.S. at 687. The Court first discusses *Strickland*'s performance prong and then discusses *Strickland*'s prejudice prong.

### 1.     Performance  Prong

19

As discussed above, counsel's failure to consult with a defendant constitutes deficient performance where "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480. To determine whether a rational defendant would want to appeal or the defendant reasonably demonstrated an interest in appealing, courts must "consider[] all relevant factors in a given case." *Id.* "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Even in cases where the defendant has pled guilty, courts must also consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

The Court first discusses whether a rational defendant would file an appeal in this case and then discusses whether Petitioner reasonably demonstrated an interest in appealing.

The factual circumstances here indicate that a rational defendant would not file an appeal. First, the Court is unaware of any "nonfrivolous grounds for appeal" given the appeal waiver in Petitioner's plea agreement. *See Sandoval-Lopez*, 409 F.3d at 1197 (finding "no ground for appeal" where the defendant's plea agreement involved an appeal waiver). Second, Petitioner's guilty plea was entered pursuant to a binding plea agreement, and Petitioner was sentenced pursuant to that binding plea agreement. As discussed above, the presentence report found Petitioner to be a "career offender" under U.S.S.G. § 4B1.1(a). PSR at 15. With Petitioner's offense level of 34, the presentence report found that Petitioner's Sentencing Guidelines range was 262 to 327 months of imprisonment. *Id.* at 23. The Court agreed with the presentence report's finding that Petitioner's Sentencing Guidelines range was 262 to 327 months. Sentencing Tr. at 16. However, the Court sentenced Petitioner to 120 months of imprisonment and a five year term of supervised release—the exact terms stated in Petitioner's binding plea agreement and the

statutory mandatory minimum sentence for Petitioner's offense. ECF No. 370 at 1. Petitioner could not be sentenced below the 120 month statutory mandatory minimum because Petitioner, a career offender, does not qualify for the safety valve. *See* U.S.S.G. § 5C1.2 (allowing a sentence below the mandatory minimum sentence only where "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines"). Moreover, Petitioner pled guilty to possession of 327.65 grams of methamphetamine, over six times the quantity that triggers the 120 month statutory mandatory minimum sentence. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (120 month statutory mandatory minimum sentence where a defendant possesses 50 or more grams of methamphetamine). Additionally, the Government dismissed the second charge against Petitioner for conspiracy to distribute 50 grams or more of methamphetamine. Sentencing Tr. at 24. The significant benefit Petitioner received from the plea agreement indicates that a rational defendant would not appeal Petitioner's conviction or sentence.

These circumstances are similar to those in *Sandoval-Lopez*, 409 F.3d 1193. In that case, the Ninth Circuit held that no rational defendant would want to appeal the defendant's conviction or sentence because the defendant (1) received the benefit of a plea agreement for a favorable sentence of seven years rather than a potentially much higher sentence, and (2) the defendant had knowingly and voluntarily waived his right to appeal, leaving him "no ground for appeal," and identified no nonfrivolous grounds for appeal. *Id.* at 1196–97. Similarly here, Petitioner received the benefit of a binding plea agreement providing the statutory mandatory minimum sentence of 120 months, waived his right to appeal, and has not identified any nonfrivolous grounds for appeal. Accordingly, as in *Sandoval-Lopez*, the Court finds that a rational defendant would not appeal Petitioner's conviction or sentence.

Next, the Court turns to whether Petitioner ever displayed to Petitioner's trial counsel an interest in filing an appeal. The Court found above that Petitioner's statements that he asked his trial counsel to file an appeal lacked credibility and found that Petitioner never asked his counsel to file an appeal. Other than Petitioner's self-serving statements in the instant motion and Petitioner's

United States District Court
Northern District of California

February 10, 2017 declaration in support of the motion, there is no evidence in the record to indicate that Petitioner ever displayed an interest in filing an appeal. Indeed, the Court has reviewed Petitioner's trial counsel's declarations, which outline the discussions between Petitioner and Petitioner's trial counsel about the plea agreement. *See* First Thompson Decl. ¶¶ 1–5; Second Thompson Decl. ¶¶ 1–9. Petitioner's trial counsel explicitly stated in those declarations that Petitioner "did not at any time . . . ask me to prepare a notice of appeal on his behalf, or in any way suggest that he wanted to file a notice of appeal." Second Thompson Decl. ¶ 7.

In addition to the direct evidence that Petitioner did not show an interest in filing an appeal, the fact that Petitioner pled guilty and received a significant benefit from that plea agreement "indicate[s] that [Petitioner was] seek[ing] an end to judicial proceedings" rather than an appeal. *Roe*, 528 U.S. at 480 (noting that a guilty plea and the receipt of "the sentence bargained for" was evidence that the petitioner was not interested in an appeal). Given Petitioner's knowing and voluntary entry of a guilty plea pursuant to the binding plea agreement, the Court's colloquy concerning Petitioner's appeal waiver at sentencing, the advantageous sentence received by Petitioner that exactly matched the terms of the binding plea agreement, and Petitioner's trial counsel's declarations, the Court finds that Petitioner never demonstrated an interest in filing an appeal to Petitioner's trial counsel.

Accordingly, because no rational defendant would have appealed Petitioner's sentence, and Petitioner never indicated to Petitioner's trial counsel that he had an interest in filing an appeal, the Court finds that Petitioner's trial counsel's performance was not deficient under *Strickland* with respect to Petitioner's trial counsel's alleged failure to consult with Petitioner about an appeal.

### 2. Prejudice Prong

Even if Petitioner were able to show deficient performance, Petitioner must also show prejudice. That is, Petitioner must "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [Petitioner] would have timely appealed." *Roe*, 528 U.S. at 484. Whether prejudice exists "turn[s] on the facts of a particular

22

case." *Id.* at 485. As in the performance analysis, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* However, "while the performance and prejudice prongs may overlap, they are not in all cases coextensive." *Id.* at 486. "To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.*

Here, Petitioner fails to demonstrate that, absent the alleged lack of consultation, there is a reasonable probability that Petitioner would have timely appealed. The Court found above that Petitioner had no nonfrivolous grounds for filing an appeal, the binding plea agreement provided significant benefits to Petitioner, and Petitioner never even indicated an interest in an appeal to Petitioner's trial counsel. Thus, none of the evidence of prejudice discussed in *Roe*—grounds for appeal that are nonfrivolous, Petitioner's interest in filing an appeal, or other evidence that Petitioner would have instructed his trial counsel to file an appeal—are present in the instant case. *Roe*, 528 U.S. at 485. Moreover, if a consultation had occurred, it is likely that Petitioner's trial counsel would have convinced Petitioner not to appeal because Petitioner would risk losing the binding plea agreement's 120 month statutory mandatory minimum sentence, which is far below Petitioner's 262 to 327 month Sentencing Guidelines range. Indeed, Petitioner likely accepted the binding plea agreement in the first place because of that significant benefit. Moreover, Petitioner, a career offender, would be unable to get a sentence below the 120 month statutory mandatory minimum sentence because Petitioner does not qualify for the safety valve. *See* U.S.S.G. § 5C1.2 (allowing a sentence below the mandatory minimum sentence only where "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines"). Accordingly, the Court finds that even if Petitioner's trial counsel failed to consult with Petitioner about an appeal and that failure constitutes deficient performance under *Strickland*, Petitioner has

23

United States District Court
Northern District of California

not been prejudiced because there is not a "reasonable probability" that Petitioner would have instructed his counsel to file an appeal.

For the foregoing reasons, the Court finds that Petitioner has failed to show ineffective assistance of counsel within the meaning of *Strickland*. Accordingly, the Court DENIES with prejudice Petitioner's § 2255 Motion with respect to his fourth ground for relief.

## IV.     CONCLUSION

The fourth ground for relief in Petitioner's § 2255 Motion pertaining to Petitioner's trial counsel's failure to file an appeal is DENIED with prejudice. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2). The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 28, 2017

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING § 2255 MOTION AS TO FOURTH GROUND FOR RELIEF